IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| **Cunningham Utility District,**<br><br>*Plaintiff*,<br><br>v.<br><br>**Mueller Systems, LLC,**<br><br>*Defendant*. | **Civil Action No. 3:19-cv-0257**<br><br>**Judge Waverly D. Crenshaw, Jr.**<br><br>**Magistrate Judge Barbara D. Holmes** |

## INITIAL CASE MANAGEMENT ORDER

The initial case management conference was held on May 21, 2019. Counsel appearing were: Greg Cashion and Mason Rollins for Plaintiff Cunningham Utility District ("CUD" or "Plaintiff") and Mary Taylor Gallagher and Coby Nixon for Defendant Mueller Systems, LLC ("Mueller" or "Defendant"). From the proposed initial case management order submitted by the parties (Docket No. 15) and discussion during the initial case management conference, and pursuant to Local Rule 16.01, the following case management schedule and plan is adopted.

**A.     JURISDICTION**

This Court has diversity jurisdiction under 28 U.S.C. § 1332 because (i) Plaintiff and the members of Defendant are "citizens of different States," *see Delay v. Rosenthal Collins Grp., LLC*, 585 F.3d 1003, 1005 (6th Cir. 2009) ("a limited liability company has the citizenship of each of its members"); and (ii) the parties agree that the amount in controversy, as alleged by CUD, "exceeds the sum or value of $75,000." Venue in this judicial district is proper pursuant to 28 U.S.C. § 1391(b) in that a substantial part of the events giving rise to Plaintiff's claims occurred within this judicial district. Jurisdiction and venue are not disputed.
1

## B. BRIEF THEORIES OF THE PARTIES

1. Plaintiff's Position:

CUD is a rural water utility district that determines a customer's water use through water meters, which registers the amount of water flowing through the meter. On or around 2007, CUD entered into contract with Mueller, formerly Hershey Meters Co., LLC, whereby CUD would be provided water meters. Mueller, through its authorized dealers, provided CUD with a ten year warranty and further extended that warranty by three years, meaning the warranty is still in effect.

The meters proved to be defective because the meters did not properly register the amount of water flowing through the meter. CUD determined that meters were failing when a customer's bill would be normal one month and significantly less or zero in subsequent months. CUD knew water was being provided to the customer and upon a site investigation, CUD confirmed that the Mueller meter failed. CUD would uninstall the meter and return it to Mueller pursuant to the warranty, which was a return merchandise authorization ("RMA"). Under the RMA, Mueller was to repair the returned meter, then send the repaired meter back to CUD to reinstall. CUD found that returned RMA meters subsequently failed. All the while, Mueller has claimed that their meters are not defective.

Given that CUD was losing water revenue while using Mueller meters, and incurring extensive labor expenses to uninstall and reinstall the defective Mueller meters, it had no choice but to purchase water meters from another entity. Mueller's warranty failed of its essential purpose.

2. Defendant's Position:

Mueller is an indirect subsidiary of Mueller Water Products, Inc. ("MWP"), a public company with subsidiaries that are leaders in the water infrastructure industry, including the design, manufacturing, marketing, and distribution of advanced metering systems for electric, gas and water systems. Since about 2007, CUD has purchased a number of water meters and encoder

registers from third-party distributors authorized to sell products of Mueller and Mueller's predecessor-in-interest, Hersey Meters Co., LLC (a subsidiary of MWP that merged with another MWP subsidiary and changed its name to Mueller in about 2010). Such purchases were made and remain subject to a warranty agreement between CUD and Mueller.

Pursuant to the warranty agreement, CUD agreed that its exclusive remedy, and Mueller's sole liability, for any breach of warranty is for Mueller to repair or provide an equivalent replacement for the returned meters and registers. CUD further agreed that any costs associated with uninstalling defective meters and registers, and any costs associated with installing replacement meters and registers, are the responsibility of CUD. CUD also agreed that Mueller is not liable to CUD for any incidental or consequential damages, including loss of revenue or profits, even if the exclusive repair or replace remedy fails of its essential purpose.

At various times since about 2012, CUD applied to Mueller for return merchandise authorizations ("RMAs") pursuant to the warranty agreement. In connection with the RMAs, CUD uninstalled meters and registers it believed were defective and returned them to Mueller. Mueller evaluated the returned meters and registers to determine whether they were in proper working condition. Mueller repaired some of the returned meters and registers and shipped them back to CUD, but in many cases Mueller shipped new meters and/or registers to CUD as replacements for the returned meters and registers. With the exception of some replacement meters and registers installed by Mueller, CUD installed the vast majority of the meters and registers it purchased from Mueller's distributors and received from Mueller pursuant to the RMAs.

Mueller denies that its warranty failed for its essential purpose. Mueller specifically denies that any significant number of the meters or registers Mueller repaired and shipped to CUD pursuant to the RMAs subsequently failed. Moreover, as previously noted, Mueller replaced many

3

of the meters and registers that CUD returned with new meters and/or registers that continue to work properly. In addition, in connection with the RMAs Mueller determined that a number of the returned meters were inoperative or unable to be tested due to the presence of foreign material (e.g., dirt and other debris) inside the meter chamber. Such contamination was not caused by Mueller or due to any defect in the meter. Rather, the presence of foreign material was likely caused by CUD during installation or removal of the meter. Pursuant to the warranty agreement, Mueller's warranty does not apply to such meters.

Mueller denies that CUD "had no choice but to purchase water meters from another entity." CUD voluntarily elected to purchase replacement water meters from another entity rather than provide Mueller with the opportunity to repair or replace the meters pursuant to CUD's exclusive remedy under the warranty agreement.

Accordingly, Mueller denies CUD's claims and allegations, and denies that CUD is entitled to any relief.

### C. ISSUES RESOLVED

The parties agree on jurisdiction and venue.

### D. ISSUES STILL IN DISPUTE

All issues concerning liability and damages are in dispute.

### E. INITIAL DISCLOSURES

The parties shall exchange initial disclosures pursuant to Fed.R.Civ.P. 26(a)(1) by no later than **July 19, 2019**. The initial disclosures must include copies (not descriptions) of responsive documents.

### F. CASE RESOLUTION PLAN AND JOINT STATUS REPORTS

The parties must make a minimum of two independent, substantive attempts to resolve this case. By no later than **October 31, 2019**, the parties must file a joint case resolution status report

4
Case 3:19-cv-00257     Document 16     Filed 05/30/19     Page 4 of 9 PageID #: 80

confirming that they made a good faith, substantive effort to resolve the case. By no later than April 17, 2020, the parties must file a second joint status report, which either confirms their second attempt at case resolution or updates the Court on their intended second attempt. The parties may mediate by agreement without the need of further order. The scheduling of the mediation must not require the extension of any case management deadline and the mediation must be completed before the dispositive motion deadline. Any request of the parties for a judicial settlement conference must be made by no later than **March 13, 2020**, and must also state (i) the reasons why mediation is not feasible; (ii) their proposed timing for scheduling of the settlement conference; and (iii) any preference of a particular Magistrate Judge to conduct the settlement conference. The parties' compliance with this case resolution plan is not optional.

### G. DISCOVERY

The parties shall complete all written discovery and depose all fact witnesses on or before **December 31, 2019**. Discovery is not stayed during dispositive or other motions, unless ordered by the Court. A party may not bring a discovery dispute to the Court for resolution before lead counsel for that party has held a telephonic or in-person discussion with lead counsel for every one of the parties adverse to it with respect to the dispute (which, in the case of multiple adverse parties, may occur separately with different adverse parties) and has made a good-faith effort to resolve the dispute. Discovery disputes that cannot be resolved after the required discussion(s) should be brought promptly to the attention of the Magistrate Judge via a request for a discovery conference. It will be within the discretion of the Magistrate Judge whether to allow filing of discovery-related motions, after counsel have scheduled and participated in a discovery conference. In connection with any discovery conference, the affected parties must file a joint discovery dispute statement, of no more than 3 pages per affected party, which identifies and describes the specific discovery

request(s) in dispute and details each party's position with supporting facts and legal authorities, including as to any proportionality considerations. The joint discovery dispute statement shall certify that lead counsel for every affected party held the required telephonic or in-person discussion(s) and made a good faith effort to resolve each discovery dispute presented in the statement. No discovery conference will be held until a compliant joint statement is filed. If the joint statement is sufficiently detailed, any party may adopt by reference the joint statement for purposes of Local Rule 7.01(a)(2) or (a)(3), but must clearly state in the filing (made in accordance with any timing requirements set forth in Local Rule 7.01(a)(3)) that the joint statement is adopted as the party's memorandum of law or response, as the case may be.

### H. MOTIONS TO AMEND OR TO ADD PARTIES

Any motions to amend or to add parties must be filed by no later than **September 30, 2019** and must comply with Local Rules 7.01 and 15.01.

### I. DISCLOSURE OF EXPERTS

The plaintiff shall identify and disclose all expert witnesses and expert reports on or before **February 14, 2020**. The defendant shall identify and disclose all expert witnesses and reports on or before **March 16, 2020**. Rebuttal experts shall be permitted only by leave of court. The plaintiff shall provide supplemental expert reports in rebuttal to the defendant's experts' reports on or before **April 15, 2020**. Unless otherwise provided for in a separate pretrial order, any other supplemental expert disclosures, which specifically include, but are not limited to, any supplemental information to expert reports, must be made in accordance with Rule 26(a) and (e). Supplemental expert opinions or other expert disclosures not timely disclosed may be excluded at trial.

### J. DEPOSITIONS OF EXPERT WITNESSES

All experts shall be deposed by no later than **May 15, 2020**.

### K.     SUBSEQUENT CASE MANAGEMENT CONFERENCE

A subsequent case management conference shall be held telephonically on **November 14, 2019, at 10:00 a.m.**, to address: status of discovery (including any known or anticipated discovery issues or disputes); prospect for settlement (including propriety of ADR); scheduling of a final case management conference; and, any other appropriate matters. Plaintiff's counsel shall initiate the call.

### L.     DISPOSITIVE MOTIONS

Dispositive motions shall be filed by no later than **June 15, 2020**. Responses to dispositive motions shall be filed within **28 days** after the filing of the motion. Briefs or memoranda of law in support of or in opposition to a dispositive motion shall not exceed 25 pages. Optional replies may be filed within **14 days** after the filing of the response and shall not exceed 10 pages. No motion for partial summary judgment shall be filed except upon leave of court. Any party wishing to file such a motion shall first file a separate motion that gives the justification for filing a partial summary judgment motion in terms of overall economy of time and expense for the parties, counsel and the Court. In all other respects, the provisions of Local Rule 56.01 shall govern.

### M.     ELECTRONIC DISCOVERY AND SERVICE

The parties anticipate reaching an agreement on how to conduct electronic discovery. Any agreement between the parties to address the topics provided by Administrative Order No. 174-1 must be reduced to writing, signed by counsel, and either filed as a stipulation of agreed-upon electronic discovery procedures, or, if the parties request court approval, submitted as proposed agreed order with an accompanying motion for approval. In the absence of compliance with this provision, the default standards of Administrative Order No. 174-1 shall apply. The parties have agreed that privileged materials, if any, generated after the commencement of this lawsuit need

not be included on privilege logs. The parties also agree to e-mail service under Fed. R. Civ. P. 5(b)(2)(E).

N. **MODIFICATION OF CASE MANAGEMENT ORDER.**

Any motion to modify the Case Management Order or any Case Management deadline shall be filed at least seven (7) days in advance of the earliest impacted deadline. Unless a joint motion, the motion for modification must include a statement confirming that counsel for the moving party has discussed the requested modification or extension with opposing counsel and whether or not there is any objection to the requested modification or extension. The motion for modification must also include: (i) the trial date and all deadlines, even unaffected deadlines, so that it will not be necessary for the Court to review one or more previous Case Management Orders in consideration of the motion and (ii) a statement that the requested extension will still conform to the requirements of Local Rule 16.01(h) that no dispositive motion deadline, including response and reply briefs, shall be later than 90 days in advance of the trial date. Motions for extensions should also detail the moving party's efforts at diligently complying with the originally scheduled deadline and the facts demonstrating good cause for modification of the deadline as required by Fed. R. Civ. P. 16(b)(4).

O. **ATTORNEYS**. Entry of an appearance or otherwise participating as counsel of record is a representation that the attorney will be prepared to conduct the trial of this action, from which an attorney may only be relieved by approval of the Court.

8
Case 3:19-cv-00257   Document 16   Filed 05/30/19   Page 8 of 9 PageID #: 84

**P.     ESTIMATED TRIAL TIME AND TARGET TRIAL DATE**

The **JURY** trial of this action is expected to last approximately **three to four days**.[1] A trial date no earlier than **January 12, 2021**, is respectfully requested. An order setting dates for trial and a pretrial conference, and detailing the parties' pretrial obligations, will be entered separately by Chief Judge Crenshaw.

It is so **ORDERED**.

_____
Barbara D. Holmes
United States Magistrate Judge

---

[1] The parties were also reminded during the case management conference of their option to consent to final disposition by a Magistrate Judge pursuant to Fed. R. Civ. P. 73 and Local Rule 73.01. As discussed, if the parties wish to utilize this option, they may jointly complete and electronically file the form Notice, Consent and Reference of a Civil Action to a Magistrate Judge found on the Court's website under the link for Forms. Not consenting will not result in any adverse consequences, and the Notice should be filed **only if all parties consent** to final disposition by a Magistrate Judge.